# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MONICA GONZALES,**

    **Plaintiff,**

    v.

**KOHN LAW FIRM, S.C.,**

    **Defendants.**

Case No. 13-CV-168

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

    Monica Gonzales ("Gonzales") filed a complaint against Kohn Law Firm, S.C. ("Kohn"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), the Wisconsin Consumer Act ("WCA"), and a common law conversion claim. Presently before me is Kohn's motion for partial judgment on the pleadings seeking dismissal of Gonzalez's punitive damages claims under the WCA and under her common law conversion claim. For the reasons I explain here, I will deny the motion.

### STANDARD OF REVIEW

    A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is decided in the same manner as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). In determining if the complaint is sufficient, the court looks only to the pleadings, which include "the complaint, the answer, and any written instruments attached as exhibits." *Id.* (internal citations omitted). A motion under Rule 12(c) is granted "only if 'it appears beyond doubt that the plaintiff

cannot prove any facts that would support his claim for relief.'" *Id.* (internal citations omitted). The moving party should be "clearly entitled to judgment." *Edmonds v. United States*, 148 F. Supp. 185, 186 (E.D. Wis. 1957). In order to succeed, "the moving party must demonstrate that there are no material issues of fact to be resolved." *Northern Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 452. Further, the complaint must be construed in the manner most favorable to the nonmoving party. *Id.* (citing *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995)).

## FACTS

In her four-count amended complaint, Gonzales alleges that Kohn violated both the FDCPA and the WCA and committed tortious conversion. She also seeks injunctive relief to correct court records in Milwaukee County. In her first cause of action, Gonzales specifically alleges that Kohn violated 15 U.S.C. §§ 1692c(b); 1692d; 1692e; 1692e(2)(a); 1692e(4); 1692e(5); 1692e(8); 1692e(10); 1692f; 1692f(1); and 1692g. (Am. Comp., Docket # 24 at ¶ 63.) She claims that Kohn violated Wis. Stat. §§ 427.104(1)(e); 427.104(1)(g); 427.104(1)(h); 427.104(1)(j); and 427.104(2) of the WCA. (*Id.* at ¶ 73.) Gonzales also alleges that Kohn has committed "additional violations of the FDCPA" and "engaged in other violations" of the WCA. (*Id.* at ¶¶ 64, 74.)

Based on the complaint, the facts as pled are as follows: Monica Gonzales resides in Oak Creek, WI. (*Id.* at ¶ 3.) Kohn Law Firm is a Wisconsin service corporation doing business in Wisconsin with a principal place of business in Milwaukee, WI. (*Id.* at ¶ 5.) Kohn is engaged in the business of collecting debts owed to merchants or other third parties. (*Id.* at ¶ 8.)

In December of 2010, Kohn's client, Capital One Bank USA NA ("CapOne") obtained a judgment against Manuel Gonzales in Milwaukee County case 10-CV-18033 for a consumer credit card. (*Id.* at ¶¶ 9, 10.) On or about February 23, 2012, Kohn filed an "Earnings Garnishment Notice"

in Milwaukee County circuit court. (*Id.* at ¶ 11.) The Notice alleged that the plaintiff was Manuel Gonzales' spouse (*id.*), and the purported basis of the garnishment was that the plaintiff and Manuel Gonzales shared a marital property interest (*id.* at ¶ 13). Monica Gonzales was not a defendant or judgment debtor in the underlying Milwaukee County case (*id.* at ¶ 12), and she was not an account holder on the Capital One account (*id.* at ¶ 17). Manuel Gonzales is the plaintiff's brother; they are not married. (*Id.* at ¶¶ 15-16.) Gonzales alleges that Kohn knew or should have known that she was not Manual Gonzales' wife (*id.* at ¶ 18) and failed to properly investigate before filing the garnishment (*id.* at ¶ 20).

Gonzales states that her first notice of the garnishment was when she received a paycheck on May 2, 2012. (*Id.* at ¶ 22.) She alleges she was never served with garnishment paperwork. (*Id.* at ¶ 21.) Upon finding out about the garnishment, Gonzales called Kohn and informed them that she and Manuel Gonzales are brother and sister, not husband and wife. (*Id.* at ¶ 23.) She was told that Kohn would not dismiss the garnishment until she proved that she and Manuel were not husband and wife. (*Id.* at ¶ 24.) She alleges that it was a material misrepresentation for Kohn to tell her it was her burden to prove she and Manuel were not married. (*Id.* at ¶ 25.) She also states that she told Kohn from the outset that the garnishment caused her to be unable to pay her bills. (*Id.* at ¶ 40.)

The plaintiff alleges that after notifying Kohn that Manuel Gonzales was her brother and not her husband, Kohn continued to engage in debt collection efforts, including sending her a letter on March 8, 2012. (*Id.* at ¶ 27.) Gonzales further alleges that in conversations with Kohn, she was asked about "how much money she made, how often she got paid, whether she had dependents under age 18, whether she worked full time[, and] whether she was on public assistance." (*Id.* at ¶ 28.) She also states that her brother, Manuel Gonzales, called Kohn about garnishing his sister's wages, at which

-3-

time he was told Monica Gonzales needed to supply her tax returns from the previous year and other documentation to stop the garnishment. (*Id.* at ¶ 29.) The plaintiff was also told that the only way to stop the garnishment was to supply her tax returns and "whatever information was acceptable to the lawyer in the case." (*Id.* at ¶ 31.) She states that she was also told that the money garnished from her paycheck had already been applied to the Capital One account. (*Id.*) Gonzales was unable to find her previous year's tax returns, so she had a tax preparer prepare and file her current tax returns in order to supply Kohn with tax returns. (*Id.* at ¶ 32.) Gonzales alleges that Kohn's representation that she had to supply her tax returns in order to stop the garnishment was a material misrepresentation. (*Id.* at ¶ 33.)

After receiving Gonzales' returns from her tax preparer, Kohn did not immediately stop the garnishment on her wages. (*Id.* at ¶ 34.) She states that she was told she had to submit all of her income tax returns—both state and federal—before Kohn would stop the garnishment. (*Id.* at ¶ 35.) She supplied her state returns to Kohn the next day, but Gonzales states she was told that an outside vendor handled the faxes and that the person handling her file would be leaving shortly. (*Id.* at ¶ 37.) When she followed up later the same month, she was told that she might have to provide other information and was told that it would take some time to get her money back. (*Id.* at ¶ 45.) Her wages were garnished a second time on March 16, 2012 after she had provided both her state and federal tax returns. (*Id.* at ¶ 47.)

Gonzales alleges that throughout the time Kohn garnished her wages, Kohn's position was that it assumed she and Manuel Gonzales were married. (*Id.* at ¶ 39.) She also states that during conversations regarding the garnishment, Kohn would attempt to discuss two other delinquent credit accounts it was trying to collect. (*Id.* at ¶ 41.) According to Gonzales, Kohn told her that it would

-4-

"go down the same route" to collect the other debts. (*Id.*) She states that she told Kohn's representative that she was calling only to discuss the garnishment at issue and would discuss the other alleged debts at another time. (*Id.* at ¶ 42.) Despite this, Gonzales alleges that Kohn continually tried to "steer the conversation back to the other unrelated accounts." (*Id.* at ¶ 43.)

Gonzales received a refund for the amount garnished from her March 2, 2012 paycheck on March 23, 2012. (*Id.* at ¶ 48.) She did not receive a refund for the garnishment from her March 16, 2012 paycheck until approximately two months after the garnishment occurred. (*Id.* at ¶ 49.) Gonzales also states that Kohn has not taken any action to correct the inaccuracy of the record in the underlying Milwaukee County case, which lists her as a judgment debtor and Manuel Gonzales' spouse. (*Id.* at ¶¶ 52-54.) She alleges that the representation to her employer that she owed the debt was false and defamatory and the continuing representation that she is a debtor on the debt and Manuel Gonzales' wife puts her at an increased risk of "more illegal collection." (*Id.* at ¶ 55.) Gonzales also alleges that Kohn's collection activities were undertaken, in whole or in part, with an intent to harass (*id.* at ¶ 58), with malice and/or an intentional disregard of her rights (*id.* at ¶ 59), and caused her to suffer damages due to loss of use and control of her money (*id.* at ¶ 60).

## DISCUSSION

Kohn's motion for judgment on the pleadings as to Gonzalez's claims for punitive damages raises three questions. First, does the WCA permit punitive damages for non-customers or "injured persons"? Second, if punitive damages are allowed under the WCA, has Gonzalez pled sufficient facts in support of that claim? Third, has Gonzalez stated a conversion claim, under which she could receive punitive damages? I will address each in turn.

1. Punitive Damages Under the WCA

    1.1  *The Statute*

The Wisconsin Consumer Act ("WCA"), Wisconsin Statutes Chapters 421 through 427, governs various types of consumer credit transactions and relationships. Chapter 427, the state court analogue to the FDCPA, governs activities by debt collectors. It allows a non-customer—or "injured person"— to sue a debt collector whose actions allegedly violate any section of Wis. Stat. § 427.104. *See* Wis. Stat. § 427.105(1). Gonzales does not contest that she is a non-customer (*see* Docket # 25 at 4), and she brings claims pursuant Chapter 427. *See Zehetner v. Chrysler Financial Co., LLC*, 2004 WI App 80, ¶¶ 20-21, 272 Wis. 2d 628, 640-41, 679 N.W.2d 919, 924-25 (finding that Wis. Stat. § 427.105(1)'s reference to "a person injured," rather than "customer" means that a non-customer may bring claims under Chapter 427).

The parties do not dispute that "injured persons" or non-customers bringing suit under Chapter 427 may recover statutory and actual damages. Wis. Stat. § 427.105(1). However, they dispute whether a non-customer, such as Gonzales, may recover punitive damages. The parties have not cited, and I have not found, any cases interpreting the punitive damage provision in the WCA.[1] Though Kohn cites *Bruesewitz v. Law Offices of Gerald E. Moore & Associates, P.C.*, No. 06-C-400-S, 2006 WL 3337361 (W.D. Wis. Nov. 15, 2006), for the proposition that the WCA does not allow for punitive damages, this case is not dispositive, persuasive, or instructive. As relevant here, although the plaintiff in that case was a customer, *Bruesewitz* states that the "WCA [does not] provide for punitive damages." *Id.* at *4. This categorical statement is directly contrary to the plain language of Wis. Stat. § 425.301(1), which states "[r]ecoveries under chs. 421 to 427 shall not in themselves

---

[1] I did find one unpublished decision where the Wisconsin Court of Appeals affirmed punitive damages to non-customers or injured parties. However, the issue on appeal was not whether non-customers can receive punitive damages under the WCA. *See Wauconda Nat. Bank v. Oetter*, 142 Wis. 2d 936, 417 N.W.2d 196 (Ct. App. 1987) (unpublished).

-6-

Case 2:13-cv-00168-NJ   Filed 01/17/14   Page 6 of 13   Document 52

preclude the award of punitive damages in appropriate cases." Moreover, there is no analysis of the statutory language on punitive damages under the WCA.

Additionally, Kohn advances several interrelated arguments to support its position that § 425.301(1) does not permit punitive damages to non-customers. First, Kohn points out that the WCA differentiates between "customers" and "persons injured" (i.e. "non-customers"). If the legislature had intended for non-customers to be awarded punitive damages, argues Kohn, it would have said so expressly. Next, Kohn argues that its position is reinforced by § 425.301(1) being in a subchapter entitled "Customer's Remedies" and by the sentence preceding the sentence discussing punitive damages in Subsection (1). The first sentence in the subsection states that remedies should be "liberally administered" to make whole the "customer as the aggrieved party." Third, Kohn finds support for its argument in *Jacobson v. Consumer Portfolio Services, Inc. et al*, No. 10-cv-643-bbc, 2011 U.S. Dist. LEXIS 156995 (Feb. 28, 2011 W.D. Wis.), analogizing the court's interpretation of the term "customer" in the WCA's statute of limitation to support a finding that § 425.301(1) does not allow non-customers to receive punitive damages.

Gonzales, for her part, makes three arguments to support her position that Section 425.301(1) permits a non-customer to claim, and receive, punitive damages. Gonzales first argues that the WCA expressly permits punitive damages in appropriate cases, even when the plaintiff is a non-customer. She points out that the sentence describing punitive damages does not contain language limiting who can get punitive damages. She argues that being in a subchapter entitled "Customer's Remedies" does not make Section 425.301(1) exclusive to customers, noting that Wis. Stat. § 990.001(6) states that the "titles to subchapters, sections, subsections, paragraphs and subdivisions of the statutes . . . are not part of the statutes."

Second, Gonzales argues that the defendant's interpretation of Section 425.301(1) would lead to absurd results and consequences in Subchapter III of Chapter 425. Gonzales points to Section 425.301(4), which prevents a successful plaintiff from double recovery—recovery under both the FDCPA and WCA. She argues that pursuant to the defendant's argument—that the subchapter's heading precludes a punitive damages award for non-customers—non-customers would be entitled to double recovery though customers would not. Gonzales also argues that because a non-customer who is injured by violation of Chapter 427 is entitled to recover under Wis. Stat. § 425.304, which also uses the term "customer," a non-customer is also entitled to punitive damages under § 425.301(1).

Finally, Gonzales argues that the *Jacobson* case actually supports her position. She notes that the section being interpreted by the court, Wis. Stat. § 425.307, explicitly includes "customer." Gonzales argues that this is in contrast to the language in Section 425.301(1) describing punitive damages, which includes neither customer nor non-customer.

When a court interprets a statute, it is to start with the language of the statute, and "[i]f the meaning of the statute is plain, [courts] ordinarily stop the inquiry." *Brunton v. Nuvell Credit Corp.*, 2010 WI 50, ¶ 16, 325 Wis. 2d 135, 146, 785 N.W.2d 302, 307 (internal quotation marks and citation omitted). The language is given "its 'common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning.'" *Noffke ex rel. Swensone v. Bakke*, 2009 WI 10, ¶ 10, 315 Wis. 2d 350, 361, 760 N.W.2d 156, 161 (quoting *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110). Interpretation of a statute must also take into account the "context and structure of a statute." *Id.* at ¶ 11, 315 Wis. 2d at 361, 760 N.W.2d at 161. The Wisconsin Supreme Court has explained in greater detail how to approach statutory interpretation:

> Our goal in interpreting a statute is to discern and give effect to the intent of the legislature. Statutory interpretation begins with the language of the statute. Each word should be looked at so as not to render any portion of the statute superfluous. But "courts must not look at a single, isolated sentence or portion of a sentence" instead of the relevant language of the entire statute. Furthermore, a statutory provision must be read in the context of the whole statute to avoid an unreasonable or absurd interpretation. Statutes relating to the same subject matter should be read together and harmonized when possible.

*Hubbard v. Messer*, 2003 WI 145, ¶ 9, 267 Wis. 2d 92, 98-99, 673 N.W.2d 676, 679-80 (internal citations omitted). If this leads the court to a "plain, clear statutory meaning, then there is no ambiguity and the statute is applied according to this ascertainment of its meaning." *Noffke ex rel. Swenson*, 2010 WI 10 at ¶ 12, 315 Wis. 2d at 362, 760 N.W.2d at 161 (internal quotation marks and citations omitted). Extrinsic sources need not be utilized. *Id.*

Thus, I start with the language of the statute. Section 425.301(1) provides:

> The remedies provided by this subchapter shall be liberally administered to the end that the customer as the aggrieved party shall be put in at least as good a position as if the creditor had fully complied with chs. 421 to 427. Recoveries under chs. 421 to 427 shall not in themselves preclude the award of punitive damages in appropriate cases.

The language of the statue supports a finding that non-customers may, in appropriate cases, receive punitive damages. First, as Kohn correctly points out, the WCA differentiates between customers and persons injured. Here, the first sentence specifies customers. However, unlike the first sentence, the second sentence which authorizes punitive damages in appropriate cases does not expressly limit them to customers. A court must "presume that the legislature chose the statutory words carefully." *Jacobson*, 2011 U.S. Dist. LEXIS 156995 at *8 (internal quotation marks and citation omitted). Second, it is true that the sentences must be read in context, and not in isolation. Yet, the second sentence, despite the use of "customer" in the first sentence, references recoveries under Chapter 427 (which authorizes suits by non-customers, a fact the legislature is presumed to know) without

-9-

inclusion of limiting language to exclude non-customers from the punitive damage provision. Thus, I must presume that the legislature intended the narrow term "customer" in the first sentence but not in the second sentence. It could have repeated customer in the second sentence, but it did not. Accordingly, I am persuaded that the use of customer in the first sentence and its absence in the second sentence supports a reading that punitive damages is not limited to customers. Throughout the WCA, the legislature makes differentiations between customers and injured persons. I must therefore read its use of customer in the first sentence and not the second sentence as intentional.

Third, the fact that the punitive damages provision is in the subchapter entitled "Customer's Remedies" is not particularly helpful to the analysis. Chapter 427, under which non-customers may bring suit, allows for recovery under § 427.105, which, in turn, provides for recovery under § 425.304. Section 425.304 is also under the subchapter entitled "Customer's Remedies." Therefore, the subchapter contains remedies for both customers and non-customers.

Finally, both parties rely on *Jacobson*, 2011 U.S. Dist. LEXIS 156995, in support of their positions. In *Jacobson*, the court found that the legislature's use of the word customer in the statute of limitations provision evidenced that the legislature intended the provision to apply only to customers and not injured persons. *Id.* at *8. Likewise, I find here that the legislature's choice of words is meaningful. It included no limiting language in the punitive damage provision.

    *1.2 Sufficiency of the Allegations in Gonzales' Complaint*

I now turn to whether Gonzales has pled sufficient facts to support an award of punitive damages for her WCA claims.

Pursuant to Wis. Stat. § 895.043, a "plaintiff may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff." The statute is written in the alternative; a plaintiff may show

-10-

that the defendant acted maliciously or that the defendant intentionally disregarded the plaintiff's rights. I agree that Gonzales has not pled sufficient facts to allege that Kohn acted maliciously. "[A]cts are malicious when they are the result of hatred, ill will, a desire for revenge, or inflicted under circumstances where insult or injury is intended." *Strenke v. Hogner*, 2005 WI 25, ¶ 26, 279 Wis. 2d 52, 65, 694 N.W.2d 296, 302 (internal quotation marks and citations omitted). However, Gonzales has pled sufficient facts to allege that Kohn intentionally disregarded her rights. As explained by the Wisconsin Supreme Court:

> [A] person acts in an intentional disregard of the rights of the plaintiff if the person acts with a purpose to disregard the plaintiff's rights, or is aware that his or her acts are substantially certain to result in the plaintiff's rights being disregarded. This will require an act or course of conduct be deliberate. Additionally, the act or conduct must actually disregard the rights of the plaintiff, whether it be a right to safety, health or life, a property right, or some other right. Finally, the act or conduct must be sufficiently aggravated to warrant punishment by punitive damages.

*Id.* at ¶ 38, 279 Wis. 2d at 70, 694 N.W.2d at 304-305. A defendant's actions need not be directed at the plaintiff in order to receive punitive damages, and the plaintiff does not need to present evidence that the defendant intended to cause her harm or injury. WIS JI-CIVIL 1707.1. Further, as explained in the jury instruction, "[t]he purpose of punitive damages is to punish a wrongdoer or deter the wrongdoer and others from engaging in similar conduct in the future." *Id.*

Here, Gonzales alleges that Kohn knew or should have known that it did not have a legal basis to file a garnishment against her. (Am. Comp., Docket # 24 at ¶ 18.) She also alleges that Kohn told her she had to prove that she was not Manuel Gonzales's spouse (*id.* at ¶ 24); that Kohn asked her questions about other alleged debts during her calls to them about the garnishment (*id.* at ¶ 28); and that Kohn misrepresented her status to the Milwaukee circuit court, her employer, and the public (*id.* at ¶ 57). When the facts are construed in her favor, as they must be, it does not "[appear] beyond

-11-

doubt that the plaintiff cannot prove any facts that would support [her] claim for relief." *Northern Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 452 (internal quotation marks and citations omitted). Accordingly, I find that dismissal of Gonzales' punitive damages claim would be inappropriate at this juncture.

        2.        Punitive Damages for the Conversion Claim

Next, the parties do not dispute that punitive damages are recoverable under a conversion claim. However, the parties do dispute whether Gonzalez has sufficiently pled facts supporting an award of punitive damages for her conversion claim. The elements of conversion are (1) intentional control or taking of property belonging to another (2) without the owner's consent, (3) resulting in serious interference with the rights of the owner to possess the property. *Bruner v. Heritage Companies*, 255 Wis. 2d 728, 736, 593 N.W.2d 814, 818 (Ct. App. 1999). To obtain punitive damages for the conversion claim, Gonzales must show that Kohn acted with malice or with an intentional disregard of her rights. She does not allege facts that show Kohn acted maliciously. Kohn argues that Gonzales has merely pled that Kohn assumed or should have known that it was actually violating her rights, rather than pleading that Kohn was actually aware that its conduct was practically certain to disregard plaintiff's rights. *See Strenke*, 2005 WI 25, ¶ 38, 279 Wis. 2d at 70, 694 N.W.2d at 304-305. I disagree. At this juncture, Gonzales has pled sufficient facts for punitive damages on her conversion claim to survive a motion for judgment on the pleadings. She alleges that even after she advised Kohn that she was not the judgment debtor or the judgment debtor's wife, Kohn continued to engage in collection activities against her. (Am. Comp., Docket # 24 at ¶ 26). Kohn failed and refused to immediately release the garnishment even upon hearing from her brother that they were siblings, not spouses. (*Id.* at ¶ 30). Kohn failed to immediately dismiss the wage garnishment even after receiving Gonzales' federal income tax returns from her tax preparer. (*Id.* at ¶ 35). Ultimately, as with her

WCA claim, whether there is sufficient evidence for a punitive damage claim on conversion to be presented to a jury is a matter for another day. Presently, construing the facts allege in the amended complaint in Gonzalez' favor, as required by law, I cannot grant Kohn's motion for judgment on the pleadings with respect to this claim.

### ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion for partial judgment on the pleadings (Docket # 14, 28) is **DENIED.**

Dated at Milwaukee, Wisconsin this 17th day of January, 2014.

BY THE COURT:

*s/ Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge

-13-

Case 2:13-cv-00168-NJ   Filed 01/17/14   Page 13 of 13   Document 52