# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MONICA GONZALES,**

    **Plaintiffs,**

  **v.**                                      Case No. 13-CV-168

**KOHN LAW FIRM, S.C.,**

    **Defendant.**

## DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS UNDER THE *ROOKER-FELDMAN* DOCTRINE

Kohn Law Firm ("Kohn") garnished Monica Gonzales' ("Gonzales") wages believing she was the spouse of Manuel Gonzales, against whom they were collecting on a judgment for unpaid debt. Monica was in fact the sister of Manuel Gonzales. She sues Kohn alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), the Wisconsin Consumer Act ("WCA"), and a common law conversion claim. Before me is Kohn's motion to dismiss based on the *Rooker-Feldman* doctrine (Docket # 77.) For the reasons that I explain here, the motion is granted in part and denied in part.

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The burden is on the plaintiff to prove, by a preponderance of the evidence, that subject matter jurisdiction exists. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). When ruling on a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), "the district court

must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F. 3d 894, 897 (1995) (citing *Rueth v. United States Environmental Protection Agency*, 13 F. 3d 227, 229 (7th Cir. 1993)). Additionally, the district court may "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir.1993) (per curiam) (quoting *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979)). A Rule 12(b)(1) objection may be raised at any stage during the course of litigation, "even after trial and the entry of judgment." *See* Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 500 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)).

## FACTS

In December of 2010, Kohn's client, Capital One Bank USA NA ("Capital One") obtained a judgment against Manuel Gonzales in Milwaukee County case 10-CV-18033 for a consumer credit card. (First Am. Compl., Docket # 24 at ¶¶ 9, 10.) On or about February 23, 2012, Kohn filed an "Earnings Garnishment Notice" in Milwaukee County circuit court. (*Id.* at ¶ 11.) The Notice alleged that the plaintiff was Manuel Gonzales' spouse (*id.*), and the purported basis of the garnishment was that the plaintiff and Manuel Gonzales shared a marital property interest (*id.* at ¶ 13). Monica Gonzales was not a defendant or judgment debtor in the underlying Milwaukee County case (*id.* at ¶ 12), and she was not an account holder on the Capital One account (*id.* at ¶ 17). Manuel Gonzales is the plaintiff's brother; they are not married. (*Id.* at ¶¶ 15-16.) Gonzales alleges that Kohn knew or should have known that she was not Manuel Gonzales' wife (*id.* at ¶ 18) and failed to properly investigate before filing the garnishment (*id.* at ¶ 20).

Gonzales states that her first notice of the garnishment was when she received a paycheck on May 2, 2012. (*Id.* at ¶ 22.) She alleges she was never served with garnishment paperwork. (*Id.* at ¶ 21.) Upon finding out about the garnishment, Gonzales called Kohn and informed them that she and Manuel Gonzales are brother and sister, not husband and wife. (*Id.* at ¶ 23.) She was told that Kohn would not dismiss the garnishment until she proved that she and Manuel were not husband and wife. (*Id.* at ¶ 24.) She alleges that it was a material misrepresentation for Kohn to tell her it was her burden to prove she and Manuel were not married. (*Id.* at ¶ 25.) She also states that she told Kohn from the outset that the garnishment caused her to be unable to pay her bills. (*Id.* at ¶ 40.)

Gonzales further alleges that after notifying Kohn that Manuel Gonzales was her brother and not her husband, Kohn continued to engage in debt collection efforts, including sending her a letter on March 8, 2012. (*Id.* at ¶ 27.) Gonzales further alleges that in conversations with Kohn, she was asked about "how much money she made, how often she got paid, whether she had dependents under age 18, whether she worked full time[, and] whether she was on public assistance." (*Id.* at ¶ 28.) She also states that her brother, Manuel Gonzales, called Kohn about garnishing his sister's wages, at which time he was told Monica Gonzales needed to supply her tax returns from the previous year and other documentation to stop the garnishment. (*Id.* at ¶ 29.) Gonzales also alleges that she was also told that the only way to stop the garnishment was to supply her tax returns and "whatever information was acceptable to the lawyer in the case." (*Id.* at ¶ 31.) She states that she was also told that the money garnished from her paycheck had already been applied to the Capital One account. (*Id.*) Gonzales was unable to find her previous year's tax returns, so she had a tax preparer prepare and file her current tax returns in order to supply Kohn with tax returns. (*Id.* at ¶

-3-

32.) Gonzales alleges that Kohn's representation that she had to supply her tax returns in order to stop the garnishment was a material misrepresentation. (*Id.* at ¶ 33.)

After receiving Gonzales' returns from her tax preparer, Kohn did not immediately stop the garnishment on her wages. (*Id.* at ¶ 34.) She states that she was told she had to submit all of her income tax returns—both state and federal—before Kohn would stop the garnishment. (*Id.* at ¶ 35.) She supplied her state returns to Kohn the next day, but Gonzales states she was told that an outside vendor handled the faxes and that the person handling her file would be leaving shortly. (*Id.* at ¶ 37.) When she followed up later the same month, she was told that she might have to provide other information and was told that it would take some time to get her money back. (*Id.* at ¶ 45.) Her wages were garnished a second time on March 16, 2012 after she had provided both her state and federal tax returns. (*Id.* at ¶ 47.)

Gonzales alleges that throughout the time Kohn garnished her wages, Kohn's position was that it assumed she and Manuel Gonzales were married. (*Id.* at ¶ 39.) She also states that during conversations regarding the garnishment, Kohn would attempt to discuss two other delinquent credit accounts it was trying to collect. (*Id.* at ¶ 41.) According to Gonzales, Kohn told her that it would "go down the same route" to collect the other debts. (*Id.*) She states that she told Kohn's representative that she was calling only to discuss the garnishment at issue and would discuss the other alleged debts at another time. (*Id.* at ¶ 42.) Despite this, Gonzales alleges that Kohn continually tried to "steer the conversation back to the other unrelated accounts." (*Id.* at ¶ 43.)

Gonzales received a refund for the amount garnished from her March 2, 2012 paycheck on March 23, 2012. (*Id.* at ¶ 48.) She did not receive a refund for the garnishment from her March 16, 2012 paycheck until approximately two months after the garnishment occurred. (*Id.* at ¶ 49.)

-4-

Gonzales also states that Kohn has not taken any action to correct the inaccuracy of the record in the underlying Milwaukee County case, which lists her as a judgment debtor and Manuel Gonzales' spouse. (*Id.* at ¶¶ 52-54.) She alleges that the representation to her employer that she owed the debt was false and defamatory and the continuing representation that she is a debtor on the debt and Manuel Gonzales' wife puts her at an increased risk of "more illegal collection." (*Id.* at ¶ 55.) Gonzales also alleges that Kohn's collection activities were undertaken, in whole or in part, with an intent to harass (*id.* at ¶ 58), with malice and/or an intentional disregard of her rights (*id.* at ¶ 59), and caused her to suffer damages due to loss of use and control of her money (*id.* at ¶ 60).

## DISCUSSION

*1.     The Rooker-Feldman Doctrine*

Under the *Rooker-Feldman* doctrine, a lower federal court cannot review, modify, or reverse a judicial determination made by a state court, even if that determination is challenged as erroneous or unconstitutional. *Rooker v. Fidelity Trust*, 263 U.S. 413, 414-16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983). As explained by the Supreme Court, *Rooker-Feldman* is a narrow doctrine, "confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. V. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). Under this doctrine, when determining if a federal plaintiff is seeking to review a state court judgment, a court must determine whether the injury alleged in the federal complaint resulted from the state court judgment. *O'Malley v. Litscher*, 465 F.3d 799, 802 (7th Cir. 2006). If so, *Rooker-Feldman* bars the claim.

*Rooker-Feldman* also prohibits indirect attempts to undermine state court decisions. The Seventh Circuit has repeatedly held that even where a federal plaintiff's claims "do not on their face require review of a state court's decision," *Rooker-Feldman* still applies if those claims are "'inextricably intertwined' with a state-court judgment, except where the plaintiff lacked a reasonable opportunity to present those claims in state court." *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012); *Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292 (7th Cir. 2007) (citing *Taylor v. Fed Nat'l Mortgage Assoc.*, 374 F.3d 529, 534–35 (7th Cir. 2004); *Brokaw v. Weaver*, 305 F.3d 660, 668 (7th Cir.2002); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 556–57 (7th Cir.1999)). In *Rizzo v. Sheehan*, the Seventh Circuit outlined the appropriate inquiry under the doctrine:

> In order to determine the applicability of the *Rooker–Feldman* doctrine, the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. If the injury alleged resulted from the state court judgment itself, the *Rooker–Feldman* doctrine dictates that the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional. If, however, the injury alleged is distinct from that judgment, i.e., the party maintains an injury apart from the loss in state court and not 'inextricably intertwined' with the state judgment . . . *Rooker–Feldman* does not [apply]. Thus, the pivotal inquiry is whether the federal plaintiff seeks to set aside a state court judgment or whether [she] is, in fact, presenting an independent claim.

266 F.3d 705, 713 (7th Cir. 2001).

At its heart, the *Rooker-Feldman* doctrine is grounded in the principles of comity, federalism, and finality. It is intended to safeguard state court decisions from review by lower federal courts. Stated differently, lower federal courts are precluded from acting as courts of appeals for state court judgments. The Supreme Court of the United States is the only federal court that has jurisdiction to review a state court judgment.

-6-

### 2. *Rooker-Feldman* and Garnishment

The series of events in this case began with Capital One obtaining judgment against Monica Gonzales' brother, Manuel Gonzales, for unpaid debts. If Monica Gonzales were seeking redress or complaining about that judgement, such claims would be barred by *Rooker-Feldman*. On that much the parties agree. However, based on that judgment, which neither party debates is lawful and legitimate, Kohn sought—and received—a garnishment on Monica Gonzales' wages (believing that Monica was Manuel's spouse). Monica Gonzales contends that in collecting on the judgment—particularly, by garnishing her wages—Kohn committed violations of the FDCPA and the Wisconsin Consumer Act, as well as tortious conversion. Kohn argues that Gonzales' claims are barred by *Rooker-Feldman* because her various claims presuppose that the garnishment was illegal and the actions she complains of occurred only after the court approved the garnishment. Before examining Gonzales' claims, I must first address whether the garnishment in this case is the type of order that triggers the *Rooker-Feldman* bar.

To begin, some background information on Wisconsin garnishment procedure is helpful. The Wisconsin procedure for filing a garnishment starts when a judgment creditor files a "garnishment notice" with the clerk of courts. Wis. Stat. § 812.35(1).[1] Upon the receipt of the notice and the payment of the fee, the clerk of courts issues two garnishment forms for each garnishee. Wis. Stat. § 812.35(2). The creditor then must serve the debtor and the garnishee. Wis. Stat. § 812.35(3). The contents of the garnishment notice and the garnishment form are prescribed by statute. Wis. Stat. §§ 812.44(2) and (3). The garnishment form contains directions the garnishee must follow, including, upon being served, whether it is likely to owe the debtor earnings and what to do if the debtor sends

---

[1] All references to the Wisconsin Statutes are to the 2011-12 statutes, which were in effect at the time of the underlying state court action and related events.

the garnishee an answer. Wis. Stat. § 812.44(3). If the debtor does submit an answer, the garnishee must send a copy of the answer to the creditor; if the answer claims a complete exemption or defense, the garnishee must not withhold earnings to pay the creditor until receiving a court order to do so. *Id.*

Until recently, the Seventh Circuit cases concerning the *Rooker-Feldman* doctrine's application to FDCPA claims have concerned judgments, not garnishments. *See Sheikani v. Wells Fargo Bank*, 577 Fed. Appx. 610 (7th Cir. 2014) (holding that *Rooker-Feldman* precluded federal jurisdiction where plaintiff challenged the state court foreclosure judgment under the FDCPA as well as § 1983); *Kelley v. Med-1Solutions, LLC*, 548 F.3d 600 (7th Cir. 2008) (holding that *Rooker-Feldman* barred jurisdiction over the plaintiffs' claims that the award of attorney fees included in the state court judgments against them violated various provisions of the FDCPA); *Long v. Shorebank Development Corp.*, 182 F.3d 548 (7th Cir. 1999) (holding that *Rooker-Feldman* did not bar plaintiff's FDCPA claims where the violations would have occurred without the state court's judgment, or, stated differently, that the violations preceded the entry of judgment in state court).

District courts have addressed the issue of whether Wisconsin garnishments constitute the type of judgment or orders contemplated by the *Rooker-Feldman* doctrine with conflicting results. In *Jung v. Cottonwood Financial*, No. 14-cv-241-jdp, 2014 WL 4796756 (W.D. Wis. Sept. 26, 2014), the plaintiff sued Cottonwood alleging violations of the FDCPA. Jung had taken out a loan from Cottonwood, and when she was unable to repay the loan, Cottonwood declared her account in default and obtained a judgment against her in Wisconsin state court. *Id.* at *1. Cottonwood then hired Kohn to collect on the judgment. *Id.* at *2. Kohn filed an earnings garnishment and served both Jung and her employer, which was in Minnesota. When the initial 13-week garnishment period

-8-

expired, Jung signed a stipulation to extend the period another 13 weeks. *Id.* Jung then moved the state court for permission to file and serve a supplemental complaint that alleged that Cottonwood violated portions of the WCA by pursuing extra-territorial wage garnishment. *Id.* The court commissioner denied her motion, and Jung did not appeal to a circuit court judge or through the state's appellate courts. *Id.*

Jung then filed the federal case, alleging that the extra-territorial garnishment violated provisions of the WCA as well as the FDCPA. *Id.* Ultimately, the court found that *Rooker-Feldman* barred Jung's claims; "a state court had already considered the merits of this issue, either implicitly, through Jung's repeated failure to raise it, or explicitly, through denying her motion to file a supplemental complaint." 2014 WL 4796756 at *4. But first, the court found that *Rooker-Feldman* applied to garnishment proceedings—not just formal judgments. *Id.* at * 3. It explained that her actual injury was "the state court's approval of defendants' request to garnish her wages . . . [in other words], the 'actual injury' she alleges is the result of a state court determination." *Id.* Jung later filed a motion for reconsideration, and the court again found that the garnishment order precluded jurisdiction under *Rooker-Feldman*. *Jung v. Cottonwood Financial Wisconsin, LLC*, No. 14-cv-241-jdp, 2015 WL 106227 (W.D. Wis. Jan. 7, 2015).

In *Whitehead v. Discover Bank*, No. 15-C-0261, 2015 WL 4668758 (E.D. Wis. Aug. 7, 2015), however, the court found that *Rooker-Feldman* did not apply because a Wisconsin garnishment form is not a state court judgment that triggers the *Rooker-Feldman* doctrine. After Discover Bank obtained judgments against Whitehead, it garnished his wages. Though it served garnishment notices on Whitehead's employer, it did not serve Whitehead. *Id.* at *1. After receiving notice of the garnishments, Whitehead filed answers to the garnishments in both cases and then filed motions to

reopen the underlying judgments. He also requested that the defendants agree to stop garnishing his wages pending a hearing on his answer and motion, though the defendants never responded. The state court held a hearing in one of the two cases and denied the motion to reopen the case, though it did not rule on Whitehead's answer to the garnishment or his counterclaims, noting that issues with the garnishment could be brought up in the other case. No hearing was held in that case, however, because Whitehead filed a petition under Chapter 128 of the Wisconsin Statutes, which allowed him to amortize his debts over a period of time. Once the amortization was in place, the garnishments were required to cease. *Id.*

The Whiteheads[2] then brought suit against Discover Bank in federal court, alleging, among other things, that Discover Bank violated the FDCPA and WCA in collecting on the judgment, specifically by failing to serve him with notice of the garnishment as well as by collecting through an invalid garnishment and by continuing to collect payment even after Whitehead filed answers to the garnishments. *Id.* at *2. The court explained that if the Whiteheads were seeking redress for injuries caused by the underlying state court default judgments, their claims would be barred by *Rooker-Feldman*. *Id.* at *3. However, the court reasoned that because the plaintiffs were seeking redress for harm caused by the garnishment forms, and the garnishment forms were not state court judgments, the *Rooker-Feldman* doctrine did not apply. *Id.* The court explained that the garnishment forms are issued by the clerk of court after a creditor files a standardized notice and pays a filing fee. "The clerk's issuing of the forms is simply an administrative or ministerial act, not an adjudication that could be described as a judgment or a decision rendered by a court." *Id.* (citing *Feldman*, 460 U.S. at 476 (stating that *Rooker-Feldman* does not bar review of ministerial or administrative acts of

---

[2] Both the debtor, David Whitehead, and his wife, Tracy Whitehead, were plaintiffs in the federal lawsuit given that Wisconsin is a marital property state and Tracy Whitehead has an undivided one-half interest.

-10-

state courts)). The court stated that the garnishment forms were more akin to state-court summonses.

*Harold v. Steel*, 773 F.3d 884 (7th Cir. 2014), is the first case where the Seventh Circuit addressed *Rooker-Feldman* in an FDCPA case where the underlying state court action involved a garnishment (rather than a judgment).[3] In *Harold*, a state court in Indiana entered a judgment against Harold. Nearly two decades later, Christoper Steel, who claimed to represent the creditor, asked the court to garnish Harold's wages. *Id.* at 885. After the court entered the order, Harold moved to vacate it, contending the Steel had misrepresented the creditor's identity. *Id.* Following a hearing, the court denied Harold's motion. Harold then filed a federal lawsuit alleging violations of the FDCPA (specifically, that Steel and his law firm had violated 15 U.S.C. § 1692e by making false statements). The district court dismissed the suit as barred by *Rooker-Feldman* because the lawsuit contested a state court's decision. On appeal, Harold argued that it was "the false statements, rather than the state court's decision, [that] inflicted the injury of which he complain[ed]." *Id.* at 886. The Seventh Circuit recognized that "[i]t is easy to imagine situations in which a violation of federal law during the conduct of state litigation could cause a loss independent of the suit's outcome." *Id.* (citing *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc). However, it found that in Harold's case, no injury occurred until the state court ruled against him, *id.*, explaining that § 1692e "forbids debt collectors to tell lies but does not suggest that federal courts are to review state-court decisions about *whether* lies have been told," *id.* at 887.

---

[3] The Seventh Circuit has addressed *Rooker-Feldman* in at least one case where there was an underlying garnishment, but the cause of action did not involve the FDCPA. *See Johnson v. Lockyer*, 115 Fed. Appx. 895, 896-97 (7th Cir. 2004) (discussing *Rooker-Feldman* in a case where the federal plaintiff alleged various federal claims and noting that a state court judgment and a garnishment order precluded federal jurisdiction).

-11-

*Harold* has several distinguishing facts that make it different from Gonzales' case and that make whether or not the Seventh Circuit has found, or would find, that all garnishments trigger *Rooker-Feldman* not entirely clear. Specifically, in *Harold*, the plaintiff moved to vacate the garnishment—a judge heard and entertained his arguments and ultimately ruled against him. Harold did not appeal the decision in state court; instead, he filed a federal case.[4] This situation is precisely the type that *Rooker-Feldman* prohibits: using the lower federal courts to collaterally attack or appeal a state court judgment or determination. *Harold*, therefore, contemplated more than the entry of a garnishment order.

Even with *Harold's* implicit recognition that garnishment orders are the type of order contemplated by *Rooker-Feldman*, *Whitehead* is persuasive in its finding that Wisconsin garnishment (prescisely, the garnishment form before a judge has made any determinations) is an administrative or ministerial process, not adjudicative. *See Feldman*, 460 U.S. at 476-77 (noting that there is a distinction between judicial and administrative or ministerial proceedings and "that the nature of a proceeding 'depends not upon the character of the body but upon the character of the proceedings.'"). But I also find persuasive *Jung's* reasoning that a garnishment's operative effects stem from its issuance by a court. Either view aside, I am constrained by the Seventh Circuit's implicit recognition in *Harold* that garnishment orders are the type of orders that trigger *Rooker-Feldman*.

But even though a garnishment can trigger the *Rooker-Feldman* doctrine, not all claims *related* to a garnishment are barred. As the court recognized in *Jung*, "a federal plaintiff's complaint can raise issues which are 'independent' of a state court judgment . . . ." giving the example that Jung

---

[4] The facts in *Jung* approach the facts in *Harold*. As noted above, the plaintiff in *Jung* sought leave to file a supplemental complaint so that she could brings claims under the WCA. A court commissioner reviewed, and denied, that motion. She did not appeal that decision to a circuit court or to the court of appeals.

could likely bring a claim that, post-judgment, the defendant tried to collect through harassing phone calls or other similar tactics. 2014 WL 4796756 at *3 n.6. Although not a garnishment case, the Seventh Circuit recognized the possibility of a mixed claims case in *Long v. Shorebank Development Corp.*, 182 F.3d 548 (7th Cir. 1999), where the plaintiff had received notice from her landlord that her rent was behind and though she spoke to them and verified her account was in fact not delinquent, she was ultimately evicted after an attorney for the landlord fraudulently induced her to sign a consent to judgment being entered against her. Long then filed a lawsuit in federal district court alleging violations of the FDCPA (as well as a due process claim, among other state law claims). *Id.* The Seventh Circuit found that *Rooker-Feldman* did not bar Long's FDCPA claims (though it did bar her due process claim). *Id.* at 555. It explained that her FDCPA claims were separate from the eviction; the "propriety of the . . . judgment [was] not directly at issue with respect to the violations of the FDCPA Long assert[ed]." *Id.* at 556.

Kohn argues, however, that Gonzales cannot bring any of her claims without presupposing that the garnishment order was invalid or illegal. In Kohn's view, the present case is analogous to *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600 (7th Cir. 2008), where the Seventh Circuit found that the plaintiffs' challenge to the grant of attorney's fees was ultimately a challenge to the judgments entered against them after they failed to pay their respective medical bills. The plaintiffs filed their lawsuit in federal court, alleging that Med-1 violated the FDCPA by misrepresenting that it was entitled to attorney's fees. *Id.* at 602-03. The Seventh Circuit found that the plaintiffs' case was barred by the *Rooker-Feldman* doctrine. Though the plaintiffs argued that they sought to remedy the defendant's "*representations* and *requests* related to attorney fees, and not the state court judgments granting those requests . . . . the defendants needed to convince the state courts that they were

-13-

entitled to attorney fees in order to succeed in extracting money from plaintiffs." *Id.* at 604-05 (emphasis in original). The Seventh Circuit went on, explaining that because the defendants needed to prevail in state court in order to capitalize on the fraud, evaluating the FDCPA claims required the court to evaluate the state court judgments. *Id.* at 605. It concluded that it was "barred from evaluating claims . . . where all of the allegedly improper relief was granted by state courts." *Id.* But even in so holding, the Seventh Circuit inherently recognized that not all claims will contemplate evaluating allegedly improper relief granted by state courts. This is so because whether *Rooker-Feldman* applies because the federal plaintiff is directly challenging the state court judgment or order or because the claims are inextricably intertwined with the judgment or order, the principle is the same: lower federal courts do not have jurisdiction to review the propriety (or even the constitutionality) of state court judgments and orders. A recent Seventh Circuit decision highlights the court's hesitance about the inextricably intertwined standard: "We are skeptical about the wisdom of asking whether something is 'intertwined' ('inextricably' or extricably) with a state court's judgment." *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 733 (7th Cir. 2014). Though the statement is made in passing, it highlights that the controlling question in determining if a claim is barred by *Rooker-Feldman* is whether the claim is asking a federal court to review, reject, or change a state court order or judgment. Asking whether something is "inextricably intertwined" can result in an overly-broad application of *Rooker-Feldman* that ignores the doctrine's underlying principles of comity, federalism, and finality.

As the Seventh Circuit has stated, the *Rooker-Feldman* doctrine "does not prevent state-court losers from presenting independent claims to a federal district court, even if the new claims involve

-14-

questions related to those in the original state court proceedings."[5] *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 645 (7th Cir. 2011) (citing *Skinner v. Switzer*, 562 U.S. 521, 531) (2011); *see also Woltring v. Specialized Loan Servicing, LLC*, No. 14-CV-222, 2014 WL 2708581, *3 (E.D. Wis. June 16, 2014) (finding *Rooker-Feldman* did not apply where the claims raised in the federal litigation, though related to a state court foreclosure action, were independent and the state court foreclosure action "did not determine whether the defendant . . . violated the FDCPA."); *Polzin v. Unifund CCR Partners*, No. 08-C-59, 2009 WL 2474668, * 3 (E.D. Wis. Aug. 11, 2009) (finding that a federal plaintiff's FDCPA claims were not barred by *Rooker-Feldman* where the plaintiff could "prevail on [the] claims without upsetting or calling into question the state-court judgment."). Additionally, where the alleged violations are independent from the state court order, "[i]t makes no difference that [the plaintiff] may also deny the correctness of the [underlying state court] order in pursuing [her] claims." *Long*, 182 F.3d at 556. Therefore, claims that do not require a court to presuppose or explicitly find the state court order or judgment was illegal or invalid do not violate *Rooker-Feldman* or the principles behind it, even if the claim relates to the order or judgment.

   3.   *Application to this Case*

Applying the cases discussed above to this case, I find that Gonzales' case involves a mix of prohibited claims and permissible claims. Gonzales' claims that require me to either review the garnishment or presume (or explicitly find) that the garnishment was illegal or invalid are barred by *Rooker-Feldman*. Specifically, Gonzales' claim that garnishing a non-party, non-debtor who was neither the judgment debtor nor the spouse of the judgment debtor was illegal debt collection cannot

---

[5] Gonzales argues that *Rooker-Feldman* does not apply here because she is not a "state court loser" or a party in the state court action. I agree that Gonzales was not a party in the Capital One v. Manuel Gonzales case. But she became a party in the garnishment once she was named in the garnishment, meaning she had the right to answer and assert that she was improperly garnished.

-15-

be pursued (Br. in Opposition to Mtn. to Dismiss, Docket # 91 at 20); it requires a finding that the garnishment itself was illegal. Her claims that failing to serve her resulted in illegal debt collection (*id.* at 21), that failing to refund the first garnishment was enforcing a right that Kohn knew or should have know did not exist (*id.* at 23), and that delaying the return of her money was harassment, oppression, or abuse and an unfair debt collection practice (*id.* at 25) are also barred under *Rooker-Feldman*.[6]

However, Gonzales' claims that do not require me to review the garnishment or presuppose or explicitly find it was illegal or invalid do not violate *Rooker-Feldman* or the principles behind it, even if the claim relates to the garnishment. Gonzales raises several claims that, though related to the garnishment, concern Kohn's actions in collecting on the judgment obtained against Manuel. So though she cannot challenge the garnishment or Kohn's seeking the issuance of the garnishment notice, she can challenge their related collection actions and interactions with her. Her allegation that Kohn violated the FDCPA and WCA through alleged misrepresentations—by telling her she had to present them with her federal and state tax returns to prove she was not Manuel's wife in order to stop the garnishment—can be analyzed without questioning whether or not the garnishment itself was legal or valid. That is, whether the garnishment was legal or illegal has no bearing on whether or not Gonzales can be successful on this claim. So, too, with her claims that Kohn used the garnishment to obtain information that would help them collect on other accounts that concerned her and her claims that Kohn intimidated her. Though these claims relate to the

---

[6] For the purpose of clarity, I refer to the claims that Gonzales outlined in her brief in opposition to the motion to dismiss. (Docket # 91 at 21-25.) Gonzales numbered her claims from 1 to 15, and the claims that are barred by *Rooker-Feldman* can be found in paragraphs 1, 2, 9, 10, and 14. The claim brought in paragraph 5, which relates to 15 U.S.C. § 1692g, also cannot be brought for different, though related, reasons, as will be explained below.

-16-

garnishment, she can prevail on them without disturbing, upsetting, or calling into question the state court garnishment. Therefore, these claims are not barred by *Rooker-Feldman*.[7]

Her conversion claim also survives—at least if it is based on what she says it is based on in her brief. (Docket # 91 at 25.) There, she states that her conversion claim is based on the costs of getting her taxes prepared. Like the claims above, this does not have the potential to call into question or disturb the garnishment; it relates to Kohn's actions in attempting to collect the debt. However, a conversion claim to get back her garnished wages would not survive (at any rate, Gonzales was refunded the wages that were garnished).

   4.   *Section 1692g Notice*

In its motion to dismiss, Kohn also argues that Gonzales' claim that Kohn violated the FDCPA by failing to provide the notice required by 15 U.S.C. § 1692g should be dismissed.[8] Gonzales claims that Kohn violated the FDCPA by failing to verify the debt once she disputed it. Even assuming that § 1692g applies to a non-judgment debtor, Gonzales' argument fails. Gonzales' argument about notice and debt verification is transposing federal requirements on an already-existing state procedure. While I appreciate that Gonzales' position is that she never received notice of the garnishment, that is the type of notice she was due, and for the reasons explained above, she may not bring a claim that the garnishment itself was improper. Though the Seventh Circuit was writing about 15 U.S.C. § 1692e, its reasoning is persuasive here: the section "does not even hint that federal courts have been authorized to monitor how debt-collection litigation is handled in state

---

[7] Again, I reference Gonzales' brief in opposition. The claims that do not offend *Rooker-Feldman* or the principles behind it are found in paragraphs: 3, 4, 6, 7, 8, 11, 12, and 13. Gonzales' conversion claim is also not barred by *Rooker-Feldman*, for the reasons explained below.

[8] Kohn also brought a motion *in limine* concerning the § 1692g notice, which is addressed by this decision.

-17-

Case 2:13-cv-00168-NJ   Filed 10/02/15   Page 17 of 18   Document 96

courts." *Harold*, 773 F.3d at 887. Though Gonzales' claims that do not call into question the garnishment order (handled by the state court) may proceed, her claim under § 1692g is attempting to re-write the state-court garnishment procedure, and that is not permitted under *Rooker-Feldman*.

  5.  *Conclusion*

In sum, I find that *Harold* implicitly recognizes that a garnishment order can trigger *Rooker-Feldman*. However, not all claims that relate to a garnishment are categorically barred. Whether claims are barred depends upon whether that claim can be decided without upsetting, disturbing, or calling into question the garnishment order. Here, Gonzales' complaint alleges mixed claims—both claims that are barred by the *Rooker-Feldman* doctrine and claims that are not barred. The claims that are barred under the *Rooker-Feldman* doctrine are dismissed and the claims that are not barred survive. Accordingly, the motion to dismiss is granted in part and denied in part.

### ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion to dismiss (Docket # 77) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the defendant's motion *in limine* pertaining to 15 U.S.C. § 1692g is **GRANTED**.

The Clerk of Court's office will contact the parties to schedule a hearing to address further proceedings in this case.

Dated at Milwaukee, Wisconsin this 2nd day of October, 2015.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge